**Dean Robert NISBET, Appellant,**

v.

**HENNEPIN COUNTY, d/b/a Hennepin County Medical Center, Respondent.**

No. C9-95-2625.

Court of Appeals of Minnesota.

June 4, 1996.

James S. Ballentine and David J. Moskal, Schwebel, Goetz, Sieben & Moskal, Minneapolis, for Appellant.

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, for Respondent.

Considered and decided by KALITOWSKI, P.J., TOUSSAINT, C.J., and FOLEY, J.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellant was allegedly injured when the truck he was driving was hit by a Hennepin County Medical Center ambulance. The district court dismissed his lawsuit concluding that (1) appellant failed to comply with a statutory notice requirement, and (2) the county is protected by vicarious official immunity. Although we disagree with the district court's analysis of the notice issue, we affirm the disposition of the case because we agree that the County is protected by vicarious official immunity.

## FACTS

In February 1993, appellant Dean Nisbet was injured when a Hennepin County Medical Center (HCMC) ambulance approaching from behind and travelling in a left lane hit the truck Nisbet was driving as Nisbet attempted to make a left-hand turn. The ambulance was responding to an emergency call and apparently had its lights flashing and siren sounding. Nisbet alleges that under the poor weather conditions (sleet), the ambulance was driving unreasonably fast. At the scene of the accident, Nisbet told the ambulance driver that he was not injured, but the next day he experienced intense neck and back pain. He did not inform the county of his injuries, however, until nearly two years later, in February 1995.

■ When Nisbet attempted to perform discovery by deposing the ambulance driver, he was informed that the county would not engage in discovery or negotiations because it was in the process of making a motion to dismiss the case. In September 1995, the district court granted the county summary judgment because: (1) Nisbet had failed to comply with a statutory notice requirement that the district court believed was mandato-

ry; and (2) the county was protected by vicarious official immunity.[1]

## ISSUES

I. Is Hennepin County Medical Center protected by vicarious official immunity?

II. Must Hennepin County Medical Center establish prejudice before Nisbet's negligence claim may be dismissed for failure to comply with the notice statute?

## ANALYSIS

■ On appeal from summary judgment, this court reviews the record to determine whether issues of material fact exist and whether the trial court erred in applying the law. *State v. French,* 460 N.W.2d 2, 4 (Minn. 1990). Appellant argues that the district court erred in its application of law by concluding that respondent is protected by official immunity and that appellant's claim is barred because appellant failed to comply with the notice requirement of Minn.Stat. § 466.05 (1994).

### I.

■ The district court concluded that appellant's claim was barred by the common law doctrine of official immunity.

> The official immunity doctrine provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."

*Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). In *Elwood,* the supreme court distinguished the common law immunity of a government employee (official immunity) from the immunity of a governmental unit under the state and municipal tort claims statutes:

> this issue. We do note, however, that where an ambulance is driving in the wrong lane, and a plaintiff/witness alleges that the driver was going too fast for road conditions, it will be a rare case in which a trial judge may conclude as a matter of law that there is insufficient evidence for a jury to consider the issue of negligence.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The district court's memorandum also suggests that Nisbet failed to present sufficient evidence of negligence to go to trial. In light of our decision on the issue of immunity, we need not address

Governmental immunity rests on the need to protect policymaking activities that involve a balancing of social, political or economic considerations. Official immunity, on the other hand, protects public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties.

*Id.* at 678 (citation omitted).

In defining the scope of official immunity, the supreme court distinguishes between discretionary duties, which are immunized, and ministerial duties, for which the officer remains liable.

*Maras v. City of Brainerd,* 502 N.W.2d 69, 77 (Minn.App.1993), *review denied* (Minn. Aug. 16, 1993) (citing *Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991)).

■ An official's duty is ministerial if it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.

*Rico,* 472 N.W.2d at 107 (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). Whether an officer's conduct merits immunity turns on the facts of each case. *Elwood,* 423 N.W.2d at 678. The *Elwood* court held that police officers responding to reports of a possibly armed man who, according to his ex-wife, was threatening both her and himself had official immunity. *Id.* The court reasoned:

The law * * * calls for police in emergency situations to exercise significant independent judgment based on the facts before them. They are afforded a wide degree of discretion precisely because a more stringent standard could inhibit action.

*Id.*

In *Pletan v. Gaines,* the parents of a student killed by a fleeing suspect's vehicle sued the pursuing officer and the city for wrongful death. 494 N.W.2d 38, 39 (Minn.1992). In holding that official immunity protected the officer, the supreme court stated:

The decision to engage in a car chase and to continue the chase involves the weighing of many factors. How dangerous is the fleeing suspect and how important is it

that he be caught? To what extent may the chase be dangerous to other persons because of weather, time of day, road, and traffic conditions? Are there alternatives to a car chase, such as a road block up ahead? These and other questions must be considered by the police officer in deciding whether or not to engage in a vehicular pursuit. And these questions must be resolved under emergency conditions with little time for reflection and often on the basis of incomplete and confusing information. It is difficult to think of a situation where the exercise of significant, independent judgment and discretion would be more required.

*Id.* at 41.

■ We believe the rationale provided in both *Elwood* and *Pletan* for applying official immunity to the conduct of officers responding to emergency situations applies with equal force to ambulance drivers who must make split second decisions about the safest and most efficient way to get to the scene of an emergency. These decisions involve consideration of factors such as road and traffic conditions, the urgency of responding quickly to a particular call and the nature of the proposed extraordinary conduct (e.g., driving slightly over the speed limit or driving against traffic). Whenever an emergency vehicle disregards the usual rules of traffic, there is an increased risk that someone may get injured. Nonetheless, we allow emergency vehicles to do so because it is thought that more good than harm will be done if they are allowed to take the necessary steps to get around heavy traffic quickly.

Nisbet would distinguish his case from *Elwood* and *Pletan* by arguing that while the decision of the driver to respond to an emergency call is protected, the manner in which he responds is not protected. As Nisbet points out, *Pletan* addressed the decision to engage in a high-speed chase, not the manner in which the chase was carried out:

In an attempt to show that police chases should not be immunized, plaintiffs cite the sections of our Motor Vehicle Code which regulate the operation of "emergency vehicles." The issue, however, is not about

how a police car should be driven during a pursuit, but whether a pursuit should have been undertaken in the first place * * *. *Id.* at 41 n. 2. The *Pletan* court, however, also stated:

Official immunity is provided because the community cannot expect its police officers to do their duty and then to second-guess them when they attempt conscientiously to do it. To expose police officers to civil liability whenever a third person might be injured would, we think, tend to exchange prudent caution for timidity in the already difficult job of responsible law enforcement.

*Id.* at 41. A similar rationale also applies to the present case. If an ambulance driver, or other driver of an emergency vehicle, will be held liable for negligent conduct, he or she will be more inclined to wait in traffic than to take a chance, no matter how small, by going around traffic, fearing that his or her conduct may later be judged negligent. Meanwhile, lives may be lost or buildings may burn to the ground.

In arguing that official immunity does not apply to emergency vehicles, appellant cites Minn.Stat. § 169.17, which provides:

The speed limitations set forth in sections 169.14 to 169.17 do not apply to authorized emergency vehicles when responding to emergency calls * * *. This provision does not relieve the driver * * * from the duty to drive with due regard for the safety of persons using the street, nor does it protect the driver of an authorized emergency vehicle from the consequences of a reckless disregard of the safety of others.

Appellant also cites Minn.Stat. § 169.20, subd. 5, a statute providing similar standard of care language.

Regarding the above-cited provisions, the Minnesota Supreme Court has held:

These statutory provisions impose the negligence standard of care on police officers when operating their vehicles in emergency situations.

*Cairl v. City of St. Paul,* 268 N.W.2d 908, 912 (Minn.1978).

■ HCMC argues that because "due regard" and "reckless disregard" are both used in Minn.Stat. § 169.17, they mean the same thing, "reckless disregard." We note that the same argument was rejected by the Texas Court of Appeals:

[T]he City submits we should decide the finding of no reckless disregard on the part of the City's driver precluded any liability on the part of the City, without further reference to the due regard language. We disagree.

\*      \*      \*      \*      \*      \*

Under general rules of construction, we are required to use the ordinary meaning of a term when that term is undefined, * * * [W]e cannot say that ordinarily, due regard means reckless disregard.

*City of Amarillo v. Martin,* 912 S.W.2d 349, 352–53 (Tex.App.1995). The Texas court, however, went on to say:

The Supreme Court has held that a "violation of art. 6701d does not preclude application of the official immunity doctrine to negligent emergency vehicle operators," *City of Lancaster v. Chambers,* 883 S.W.2d 650, 661 n. 6, and the City is correct in its statement that it could also assert and prove its employee's immunity as a defense to liability.

*Id.* at 353 (citation omitted). Likewise, we conclude that although Minn.Stat. § 169.17 may impose a negligence standard of care on drivers of emergency vehicles, that statute, and those of a similar nature, do not preclude the defense of official immunity.

In *Duellman v. Erwin,* 522 N.W.2d 377, 380 (Minn.App.1994), *review denied* (Minn. Dec. 20, 1994), this court held that a police officer's decision to return to an accident scene in a non-emergency situation was discretionary because "it involved weighing some factors, albeit not in an emergency situation." *Id.* However, the court held that how and where the officer decided to park his car was a ministerial decision. *Id.* The trial court had found that the officer had exercised independent judgment and discretion because the officer decided to park on the west shoulder of the road, facing oncoming traffic to:

(1) protect the towing area from other traffic; (2) provide sufficient room for the tow truck driver; (3) possibly use the left-sided mounted spotlight; and (4) release the police dog.

*Id.* This court, nonetheless, held that "the degree of discretion involved in [the officer's] decision, * * * [did] not rise to the level that justifies according official immunity." *Id.*

Significantly, however, the *Duellman* court emphasized that

there was no urgency in returning to the scene, and therefore [the officer's] decision where to park did not require him to weigh a multitude of factors or exercise judgment under the circumstances.

*Id.*

■ In the present case, the ambulance driver was acting under exigent circumstances, and we believe that this fact is of paramount importance under Minnesota case law. *See, e.g., State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567 (Minn.1994) (officers entitled to official immunity during execution of a felony stop); *Elwood,* 423 N.W.2d 671 (officer responding to domestic dispute entitled to official immunity). Similarly, a firefighter's tactical decision to quit the active fighting of a fire was protected by the discretionary function exception to the Tort Liability Act, Minn.Stat. § 466.03, subd. 6 (1988). *Dahlheimer v. City of Dayton,* 441 N.W.2d 534 (Minn.App.1989), *review denied* (Minn. Aug. 15, 1989).

We note that there are Minnesota cases that seem to suggest there is no immunity in the present case. These cases involve lawsuits in which officials driving emergency vehicles were subjected to a negligence standard of care. *See, e.g., Cairl,* 268 N.W.2d at 908 (negligence standard applies to officer involved in collision with plaintiff during high-speed chase); *Van Tassel v. Hillerns,* 311 Minn. 252, 248 N.W.2d 313 (1976) (negligence standard applied to police officer colliding with another vehicle while in pursuit of that vehicle); *Markle v. Haase,* 245 Minn. 520, 73 N.W.2d 362 (1955) (negligence standard applied to driver of fire truck that collided with another vehicle while crossing an intersection). It should be emphasized, however, that in the above-cited cases, offi-

cial immunity was apparently not asserted as a defense, and the issue was not addressed.

We conclude, therefore, that a county ambulance driver who is driving under emergency circumstances within the scope of his or her official duties is protected by official immunity, provided that his or her conduct is not willful or malicious. *See Lommen v. City of East Grand Forks,* 522 N.W.2d 148, 149 (Minn.App.1994) (under Minnesota law, Minnesota police officer who collided with another motorist while pursuing suspect into North Dakota would be protected by official immunity unless his actions were "willful or malicious"), *review granted* (Minn. Dec. 2, 1994), *appeal dismissed* (Minn. Aug. 9, 1995).

■ The district court concluded that if immunity is available to the individual, it is vicariously available to the county. The supreme court has held that whether a governmental employer may share the immunity of its employee by way of vicarious official immunity is a policy question. *Olson v. Ramsey County,* 509 N.W.2d 368, 372 (Minn.1993) (citing *Pletan,* 494 N.W.2d at 42). In *Pletan,* the supreme court reasoned:

If vicarious official immunity does not apply, the conduct of the immunized police officer must still be reviewed in order to impose liability on the employer. But then the purpose of official immunity, which is to shield an officer's exercise of independent judgment from civil adjudication, is, as a practical matter defeated. Police officers may justifiably think their own employment performance is being evaluated and consequently may decline to engage in pursuit when pursuit is indicated.

*Pletan,* 494 N.W.2d at 42. We conclude that this rationale also applies to ambulance drivers whose conduct will come under close scrutiny if their employers are held liable for their negligence. We hold, therefore, that Hennepin County enjoys vicariously the official immunity of its ambulance drivers.

**II.**

The district court also dismissed Nisbet's claims for failure to comply with the notice requirement of Minn.Stat. § 466.05, subd. 1 (1994). In light of our holding on the issue of

official immunity, we need not address this issue. However, because we feel that the district court clearly misapplied the law, we feel compelled to address the issue by way of clarification. The notice statute at issue requires that any individual

> who claims damages from a municipality or municipal employee acting within the scope of employment for or on account of any loss or injury within the scope of section 466.02 shall cause to be presented to the governing body of the municipality within 180 days after the alleged loss or injury is discovered a notice stating the time, place and circumstances thereof, the names of the municipal employees known to be involved, and the amount of compensation or other relief demanded. Actual notice of a possible claim shall be construed to comply with the notice requirements of this section.

Minn.Stat. § 466.05, subd. 1.

Nisbet argues that because failure to notify is not a jurisdictional defect, there must be a showing of prejudice before appellant's claim may be dismissed. Nisbet relies primarily on *Naylor v. Minnesota Daily,* 342 N.W.2d 632 (Minn.1984). In *Naylor,* the supreme court held that failure to notify the defendant, the State of Minnesota, of her claim within 180 days as required by Minn. Stat. § 3.736, subd. 5 was a non-jurisdictional defect. *Id.* at 633–34. The court noted the difference between Minn.Stat. § 3.736, subd. 5, requiring notice to state defendants and Minn.Stat. § 466.05, subd. 1, requiring notice to municipal defendants:

> [Section 3.736, subd. 5] is copied almost verbatim from the municipal notice of claim statute which was adopted in 1963 and amended several times. Minn.Stat. § 466.05 (1982). There is, however, one most notable exclusion. The municipal notice statute contains in subdivision one the following language which does not appear in the State Tort Claims Act, to-wit: "No action therefor shall be maintained unless such notice has been given and unless the action is commenced within one year after such notice."

*Id.* at 633. The court found the above distinction to be absolutely dispositive in arriving at its decision that failing to comply with the notice requirement under section 3.736, subd. 5 was not a jurisdictional defect. *Id.* at 633–34. The court reasoned that the intent by the legislature to bar payment of any claim where notice was not given was "highly unlikely since the legislature had before it examples of statutory provisions clearly barring suit in the event the claimant fails to give notice." *Id.* at 634. One of the "examples" the court referred to was Minn.Stat. § 466.05, subd. 1, the statute at issue in this case. *See id.*

Since *Naylor,* a significant change to Minn. Stat. § 466.05, subd. 1 has occurred. The statute no longer contains the very language that the *Naylor* court relied upon in distinguishing it from Minn.Stat. § 3.736, subd. 5. Accordingly, under *Naylor,* it is clear that failure to give notice under Minn.Stat. § 466.05, subd. 1 can no longer be considered a jurisdictional defect. This conclusion is supported by *O'Brien v. Mercy Hosp. & Convalescent Nursing Care Section,* 382 N.W.2d 518 (Minn.1986). In that case, the supreme court stated the following:

> In [*Glassman v. Miller,* 356 N.W.2d 655 (Minn.1984)], we struck the language of Minn.Stat. § 466.05, which precluded the bringing of an action unless notice is given pursuant to the statute, as violative of the equal protection requirements of both the state and federal constitutions because we could discern no rational basis for distinguishing between municipal and state tortfeasors. [*Glassman,* 356 N.W.2d at 656.] After *Glassman,* failure to give notice is not grounds for dismissal of an action, but may be used as a defense provided the municipality can establish prejudice, consistent with the construction this court gave the state tort claims statute in *Naylor v. Minnesota Daily,* 342 N.W.2d 632, 634–35 (Minn.1984).

*Id.* at 521.

In concluding that appellant's failure to give notice under Minn.Stat. § 466.05, subd. 1 was a jurisdictional defect, the district court relied on an analogy between that statute and Minn.Stat. § 340A.802 (1992), a notice statute governing causes of action for injuries resulting from intoxication by the

illegal sale of alcoholic beverages. The supreme court has treated the failure to comply with that statute as a jurisdictional defect. *See Schulte v. Corner Club Bar*, 544 N.W.2d 486 (Minn.1996) (compliance with Minn.Stat. § 340A.802 is condition precedent to civil damage action). A crucial difference, however, between Minn.Stat. § 466.05, subd. 1, and the statute presently at issue is that section 340A.802, subd. 2 still contains the jurisdictional language:

> No action for damage or for contribution or indemnity may be maintained unless the notice has been given.

Thus, contrary to the district court's memorandum, the statutes are not at all "essentially the same." Rather, in light of *Naylor* and *O'Brien*, they are profoundly dissimilar. Accordingly, under the rationale provided in *Naylor*, there must be a showing of prejudice to the defendant before an action may be dismissed pursuant to Minn.Stat. § 466.05, subd. 1.

## DECISION

Nisbet's negligence claim against HCMC is barred by the county's vicarious official immunity for the allegedly negligent actions of its ambulance driver. The district court's order dismissing the action is affirmed.

**Affirmed.**