# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-2022

Patricia Briggs, individually
and o/b/o Eddie Briggs, deceased,
Respondent,

vs.

Officer Don Rasicot, individually
and as a Crookston Police Department Officer, et al.,
Appellants.

**Filed June 29, 2015**
**Affirmed**
**Kirk, Judge**

Polk County District Court
File No. 60-CV-13-680

Tatum O. Lindbo, Timothy M. O'Keeffe, Kennelly O'Keeffe, Ltd., Fargo, North Dakota
(for respondent)

Jon K. Iverson, Stephanie A. Angolkar, Iverson Reuvers Condon, Bloomington, Minnesota
(for appellants)

Considered and decided by Hudson, Presiding Judge; Kirk, Judge; and Smith, Judge.

# S Y L L A B U S

A police officer is not entitled to official immunity from liability for the decision to leave his unattended squad vehicle unlocked with its engine running, in violation of city ordinance and police department policy.

## OPINION

**KIRK**, Judge

While attempting to arrest a man on suspicion of criminal damage to property, appellant Officer Don Rasicot left his unattended squad vehicle unlocked with the engine running, in violation of city ordinance and police department policy. The suspect fled in Officer Rasicot's squad vehicle and crashed into a vehicle driven by respondent Patricia Briggs's husband, killing him and seriously injuring Briggs. Briggs sued Officer Rasicot and appellant City of Crookston, alleging negligence, wrongful death, and negligent infliction of emotional distress. The district court denied appellants' motions for summary judgment, concluding that, as a matter of law, Officer Rasicot is not entitled to common law official immunity and the City of Crookston is not entitled to vicarious official immunity. We affirm.

## FACTS

On the afternoon of September 3, 2011, Crookston Police Officer Ryan Bergquist responded to a call from the VFW building regarding a person pounding on a vehicle and demanding money. Officer Bergquist drove his squad vehicle to the VFW and spoke with the complainant, who told him that a man named Ricky had damaged her vehicle and was demanding money. As Officer Bergquist was speaking to the complainant, she pointed out two men who were walking down the street about a block away and identified one of the men, later identified as Ricardo Mello, as the perpetrator. Officer Bergquist called out to the men to come over, but they ignored him and walked towards a local bar.

From his squad vehicle, Officer Bergquist radioed Crookston Police Officer Don Rasicot that Mello was walking toward a bar and that he was "not being cooperative." Officer Rasicot, who was approximately 30-45 seconds away from the bar, drove over and observed Mello walking toward the bar's south entrance. While en route to the bar, Officer Rasicot did not activate his vehicle's lights and sirens. At his deposition, Officer Rasicot testified that he believed that Mello was assaultive, combative, and had a tendency to flee arrest based on Mello's prior run-ins with law enforcement.

The officers decided that Officer Rasicot would block Mello's exit from the north entrance of the bar while Officer Bergquist would enter the bar through its south entrance. Officer Rasicot parked his squad vehicle a few feet from the north entrance of the bar. As he sat in his squad vehicle, Officer Rasicot saw a person that he believed to be Mello through one of the bar's windows. Intending to quickly apprehend Mello and secure him in the back of his squad vehicle, Officer Rasicot exited his vehicle, leaving the engine running and the doors closed, but unlocked. As Officer Rasicot approached the north entrance, he lost sight of Mello. Officer Rasicot entered the bar, walked down a hallway, and made contact with Mello. Officer Rasicot tased Mello, and Mello pulled the darts out of his body and pushed Officer Rasicot. Officer Bergquist arrived on the scene and tased Mello, again with no effect. Both officers then maced Mello, but the mace left the officers temporarily blinded.

Mello escaped and exited through the north entrance of the bar. The officers gave chase. Mello entered Officer Rasicot's unlocked squad vehicle, and the officers unsuccessfully attempted to grab the keys from the vehicle's ignition. Mello put the

3

vehicle into gear and sped away.  As Mello fled the scene, he collided with another vehicle, killing the driver, Eddie Briggs, and seriously injuring the driver's wife, Patricia Briggs, who was a passenger in the vehicle.  Officer Rasicot arrested Mello at the hospital.

Mello pleaded guilty to second-degree murder, criminal vehicular homicide or operation, fourth-degree assault, and obstruction of legal process.  The district court sentenced Mello to 20 years in prison.

On April 11, 2013, Patricia Briggs filed a civil complaint alleging negligence, wrongful death, and negligent infliction of emotional distress against Officer Rasicot and the City of Crookston.  Officer Rasicot and the City of Crookston moved for summary judgment, arguing that Briggs's claims were barred by both common law official immunity and vicarious official immunity, the public-duty doctrine, and that as a matter of law Officer Rasicot's actions were not a direct cause of the accident.

In May 2014, the parties and witnesses were deposed.  The record established that in 2011, a city ordinance made it unlawful for any person to leave a motor vehicle unattended while the engine was running unless all of the doors were locked.  Crookston, Minnesota, Code of Ordinances § 72.27A (2011).  Officer Rasicot testified that he was not aware of the unattended-vehicle ordinance at the time of the incident, but Officer Bergquist acknowledged in his deposition that he knew of the ordinance.

The record also established that, in 2001, the police department had issued a policy-and-procedures manual, which served as a set of uniform guidelines for the department.  Although the manual did not specifically address the conduct in question in this case, the general rules-of-operation section of the manual stated that "[v]ehicles will not be operated

4

in an unlawful manner except in circumstances allowed by [Minnesota] [s]tatute and [d]epartment policy on pursuit and emergency driving." Crookston Police Dep't, *Policy and Procedures Manual*, Policy 101, IV.O.3 (2001). The manual defined "pursuit" as "[a] multi-stage process by which an officer initiates a vehicular stop and a driver resists the signal or order to stop, increases speed, takes evasive action, and/or refuses to stop the vehicle." *Id.*, Policy 118, III.1 (2001). The policy defined "emergency vehicle operation" as "[t]he use of a [Crookston Police Department] vehicle whether fully marked or not, with both emergency lights and siren or emergency lights only turned on while responding to a situation which the officer reasonably believes requires immediate attention." *Id.*, III.4.

Timothy Motherway, former chief of the Crookston Police Department, testified in his deposition that it was left to the officers' discretion to determine whether to activate their squad vehicle's lights and sirens when responding to a call. Chief Motherway recalled instructing the police officers at a departmental meeting about the importance of locking their squad vehicles while on duty for safety purposes, but could not recall an officer ever enforcing the unattended-vehicle ordinance.

Following a hearing on Officer Rasicot's and the City of Crookston's motions for summary judgment, the district court ruled that Officer Rasicot's conduct was not protected by common-law-official-immunity defense and that the City of Crookston was therefore not protected by vicarious official immunity, citing the city ordinance concerning unattended vehicles. The district court also concluded that there are genuine issues of material fact concerning causation.

This interlocutory appeal, limited to immunity issues, follows.

## ISSUES

1.  Is Officer Rasicot entitled to common law official immunity?

2.  Is the City of Crookston protected by vicarious official immunity?

## ANALYSIS

**I.  Officer Rasicot is not entitled to common law official immunity.**

A district court's order denying summary judgment on immunity grounds is immediately appealable. *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn. 2006). The application of immunity is a legal question that we review de novo. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004).

Common law official immunity precludes a public official who is charged by law with duties calling for the exercise of his judgment or discretion from being held personally liable for damages unless the official acted willfully or maliciously.[1] *Elwood v. Cnty. of Rice*, 423 N.W.2d 671, 677 (Minn. 1988). "The starting point for analysis of an immunity question is identification of the precise governmental conduct at issue." *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 219 (Minn. 1998) (quotation omitted). Whether official immunity applies to a police officer's conduct turns on the facts of the case. *Nisbet v. Hennepin Cnty.*, 548 N.W.2d 314, 317 (Minn. App. 1996).

Officer Rasicot argues that the district court erred in finding that the city ordinance and the police department policies created a ministerial duty requiring him to lock his squad vehicle when he left it unattended with the engine running. He contends that the

---

[1] Briggs does not allege that Officer Rasicot's conduct was willful or malicious.

city's unattended-vehicle ordinance was largely unknown and had never been enforced, and that the police department policies were merely guidelines that did not require him to lock his unattended, running squad vehicle. "Ministerial duties are absolute, certain, and imperative, and involve merely execution of a specific duty arising from fixed and designated facts." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 (Minn. 1999) (quotation omitted). "A ministerial duty is simple and definite, leaving nothing to the discretion of the official." *Id.* In contrast, a discretionary act "requires the exercise of individual judgment in carrying out the official's duties." *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn. 1998).

Viewing the evidence in the light most favorable to Officer Rasicot, the city ordinance and police department policies imposed a ministerial duty requiring him to lock his unattended squad vehicle, which he failed to fulfill. The plain language of the city ordinance required citizens to lock an unattended vehicle with the engine running, and the police department policy manual stated that departmental vehicles would not be used in an unlawful manner except in the case of emergencies or pursuit. Although Officer Rasicot claimed no knowledge of the ordinance, Officer Bergquist was aware of it and Chief Motherway instructed the police department on the importance of locking an unattended squad vehicle while on duty for safety purposes. We also expect that a police officer knows the laws that he is hired to enforce. "It is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse. All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those

laws that are likely to affect their usual activities." *State v. King*, 257 N.W.2d 693, 697-98 (Minn. 1977) (citation omitted).

It is clear from the record that Officer Rasicot's conduct did not fall within the scope of responding to an emergency or a vehicle pursuit, which are the two qualifying exceptions to the city ordinance according to police department policy. Officer Rasicot argues that he is entitled to official immunity because he believed, based on previous experiences with Mello and Mello's lack of cooperation with Officer Bergquist, that he was responding to an emergency call involving a fleeing and resisting suspect. During an emergency, an officer must act with incomplete information and with little time for reflection, which is the type of situation demanding the exercise of significant, independent judgment. *See Elwood*, 423 N.W.2d at 678. But here, Officer Rasicot was investigating a damage-to-property complaint and there is no evidence that anyone was in immediate danger. He did not activate the lights or sirens of his vehicle when responding to Officer Bergquist's request for backup, which is clearly required by police department policy when responding to an emergency. Only after Officer Rasicot parked his squad vehicle, leaving it unattended with the engine running, entered the bar, and confronted Mello did the situation develop into an emergency.

The facts of the instant case are inapposite to cases in which appellate courts have held that police officers responding to an emergency call were entitled to official immunity. *See, e.g.*, *Vassallo v. Majeski*, 842 N.W.2d 456, 460, 465 (Minn. 2014) (sheriff's deputy entitled to official immunity when responding to home-security alarm call, proceeds against a traffic light with his emergency lights on, but sirens off, and

8

collides with a motorist); *Kari*, 582 N.W.2d at 925 (city-employed paramedic entitled to official immunity when driving to scene of a medical emergency and striking pedestrian); *Pletan v. Gaines*, 494 N.W.2d 38, 39-41 (Minn. 1992) (police officer entitled to official immunity when engaging in a high-speed pursuit of a criminal suspect and suspect's vehicle hits and kills child walking home from school). The record supports the district court's determination that, as a matter of law, Officer Rasicot violated a ministerial duty and that he is not entitled to common law official immunity.

**II. The City of Crookston is not protected by vicarious official immunity.**

"Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity." *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 297 (Minn. App. 2001), *review denied* (Minn. Feb. 28, 2002). Officer Rasicot's conduct is not protected by common law official immunity. Hence, the City of Crookston is not entitled to vicarious official immunity, and the district court did not err in denying summary judgment on this ground.

## D E C I S I O N

Because Officer Rasicot left his unattended squad vehicle unlocked with the engine running, in violation of city ordinance and police department policy, he is not entitled to common law official immunity from claims resulting from a two-car collision after a fleeing suspect stole the squad vehicle, killing another driver and seriously injuring the passenger. City of Crookston is not entitled to vicarious official immunity.

**Affirmed.**

9