Brian A. PLETAN and Pamela J. Pletan, as Trustees for the heirs of Shawn L. Pletan, deceased, Petitioner, Appellants,

v.

Kevin J. GAINES, Boyd Barrott, et al., Independent School District No. 281, Respondents,

and

Allstate Insurance Company, Intervenor, Respondent.

No. C8–91–1456.

Supreme Court of Minnesota.

Dec. 31, 1992.

Steven D. Emmings, John W. Carey, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for appellants.

James R. Peterson, L.A.M.P., Minneapolis, for Kevin J. Gaines.

Richard A. Lind, Lind, Jensen & Sullivan, Minneapolis, for Independent School Dist. # 281.

Bruce A. Peterson, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Boyd Barrott, et al.

Robert H. Tennant, III, Bell, Arcand, Florin & Tennant, St. Paul, for Allstate Ins. Co.

League of MN Cities, Carla Heyl, St. Paul, amicus curiae.

SIMONETT, Justice.

We revisit the doctrines of official and discretionary immunity, this time in a case where a child walking home from school is fatally struck by the car of a criminal suspect fleeing a police car in a high-speed chase. The court of appeals ruled there was no liability on the part of the city or its police officer, nor any liability on the part of the school district. *Pletan v. Gaines*, 481 N.W.2d 566 (Minn.App.1992). We affirm.

On September 28, 1987, while walking home from school, Shawn Pletan was struck and killed by a car driven by Kevin Gaines. At the time of the incident, Gaines was being pursued by Sgt. Boyd Barrott of the City of Crystal's police department in a high-speed car chase. Shawn Pletan's parents, as plaintiff trustees, have brought this wrongful death action against the fleeing fugitive Gaines, the police officer Barrott, the City of Crystal, and Independent School District No. 281.

This is a second appeal. In the first appeal, the court of appeals ruled that the city had no discretionary function immunity for the conduct of its police officer in deciding to engage in a high-speed car chase. As a consequence of this ruling, the city would be liable under *respondeat superior*

for any negligence of its police officer, *unless* the officer himself had official immunity and such immunity inured to the city's benefit. Thus the case was remanded to the trial court for further proceedings. *Pletan v. Gaines*, 460 N.W.2d 74 (Minn.App.1990), *rev. denied* (Minn., Nov. 1, 1990).

On remand, the parties again moved for summary judgment. This time the trial court determined that the police officer had official immunity and dismissed the actions against the officer and the city. The cause of action against the school district was likewise dismissed on the ground that the school district had discretionary function immunity under Minn.Stat. § 466.03, subd. 6 (1990). The court of appeals affirmed both decisions of the trial court. We granted plaintiffs' petition for further review.

On the afternoon of September 28, 1987, Sgt. Barrott, who was patrolling in his squad car, responded to a radio call of a "snatch and grab" shoplifting at a nearby clothing store. Barrott drove towards the store and, so he testified, soon saw a vehicle and driver matching the descriptions provided by the police dispatcher traveling away from the store at an estimated speed of 60 m.p.h. (Gaines claimed he was going only 30 m.p.h.) Barrott turned on his flashing red lights and gave chase. The two cars sped down the city streets, weaving in and out of traffic, and skidding around corners. At times the two vehicles reached speeds of more than 75 m.p.h. in a 45 m.p.h. zone, with Gaines driving through three red lights and, at one point, ramming two cars.

Finally, the two vehicles came to the intersection of Highway 81 and 40th Avenue, where a truck was stopped in the left turn lane for a red light. Barrott noticed a pair of legs under the stopped truck running across the highway in the crosswalk with the green light. The sergeant applied his brakes and slowed to 5 to 10 m.p.h., but Gaines proceeded through the red light, striking and killing Shawn Pletan as he emerged from behind the stopped truck.[*] Barrott radioed for help for the boy and resumed pursuit, catching Gaines a few

blocks further on when his car went out of control.

Gaines pled guilty to manslaughter and to six counts of theft. Gaines admitted he was a heavy drug user and had used both heroin and cocaine within 24 hours of the car chase. The entire chase took slightly more than 2 minutes.

The accident happened about 4 p.m. on September 28, 1987, shortly after school had ended at nearby Lakeview Elementary where Shawn Pletan, 7 years old, was a second grader. Shawn normally rode the bus home, but for some reason had decided to walk that day. He had shortly before completed a 2–week bus orientation program, during which students who ride the bus wear tags identifying their bus and their destination. The students wear these tags until they are familiar with the routine.

After completion of the orientation course, school district policy provides that students are personally responsible for timely boarding their proper bus. At Lakeview Elementary, however, the school had informally adopted a supplemental procedure whereby the teachers would walk the students out of the school building either to a line designated for bus riders or a line designated for those who would walk home. Students, however, remained personally responsible for boarding the appropriate bus. Somehow, without his teacher noticing, on this day Shawn did not board his bus as usual but instead walked home.

We have four issues: (1) Is the police officer entitled to the protection of official immunity? (2) If so, is the officer's municipal employer covered also by the officer's official immunity? (3) Can an officer's decision to pursue, if negligent, be a direct cause of decedent's fatal injury? and (4) Was the school district's adoption and implementation of its student bus policy protected by discretionary immunity?

## I.

The first question is whether the police officer is entitled to official immunity. The common law provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988), *quoting Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976). The discretion involved in official immunity is different from the policymaking type of discretion involved in discretionary function immunity afforded governmental entities.[1] Official immunity involves the kind of discretion which is exercised on an operational rather than a policymaking level, and it requires something more than the performance of "ministerial" duties.

In *Elwood,* for example, sheriff deputies, responding to reports of a possibly armed man in a house threatening his wife and himself, were held to have official immunity when they entered the house without a warrant. We said the deputies were in an emergency situation requiring them "to exercise significant independent judgment based on the facts before them." 423 N.W.2d at 678. To encourage responsible law enforcement, we noted, police are "afforded a wide degree of discretion precisely because a more stringent standard could inhibit action." *Id.*

We begin our official immunity analysis of this case, then, by looking at the nature of plaintiffs' claim. Plaintiffs point out that the officer drove his squad car at high speeds, weaving in and out of traffic, and going through controlled intersections. This driving, given the nature of police pursuits, cannot be said, by itself, to be unreasonable; or, to put it another way, the gist of plaintiffs' claim is really that it was negligence for the police officer to

---

**1.** In *Pletan I,* as we noted, the court of appeals held that the City of Crystal was not entitled to discretionary function immunity. The city's claim of discretionary function immunity, however, was with respect to the police officer's decision to pursue—which plainly did not involve policymaking. The city did have a written Vehicular Pursuit Policy in place (*see* footnote 2, *infra*). Plaintiffs made no claim of negligence for the adoption of this policy, which would seem to be covered by the city's discretionary function immunity.

engage in a high-speed car chase in the first place and then to continue that chase.[2] It is, therefore, for the allegedly negligent decision to pursue the fleeing shoplifter that the claim of official immunity is made. Plaintiffs agree that the officer's conduct was not willful or malicious, so that the "willful or malicious" exception to official immunity does not apply.

The decision to engage in a car chase and to continue the chase involves the weighing of many factors. How dangerous is the fleeing suspect and how important is it that he be caught? To what extent may the chase be dangerous to other persons because of weather, time of day, road, and traffic conditions? Are there alternatives to a car chase, such as a road block up ahead? These and other questions must be considered by the police officer in deciding whether or not to engage in a vehicular pursuit.[3] And these questions must be resolved under emergency conditions with little time for reflection and often on the basis of incomplete and confusing information. It is difficult to think of a situation where the exercise of significant, independent judgment and discretion would be more required.

■ Some years ago, in *Cairl v. City of St. Paul*, 268 N.W.2d 908 (Minn.1978), we rejected the suggestion that a kind of "strict liability" be imposed on municipalities for losses incurred by innocent third parties in a high-speed police chase. Although the defense of official immunity

was not raised, we cited the "uncertain ramifications" of handicapping police efforts to catch lawbreakers. *Id.* at 912. Admittedly, a high-speed car chase can be dangerous, not only to the pursuer and the pursued, but also to uninvolved members of the public using the highways. Even so, the community imposes a duty on its governmental bodies and law enforcement officials to provide its citizens with security in person and property from lawless people, and this duty, on occasion, necessarily will involve high-speed car chases. Official immunity is provided because the community cannot expect its police officers to do their duty and then to second-guess them when they attempt conscientiously to do it. To expose police officers to civil liability whenever a third person might be injured would, we think, tend to exchange prudent caution for timidity in the already difficult job of responsible law enforcement.

All things considered, we conclude that decisions of police officers to engage in and to continue vehicular pursuit of fleeing criminal suspects are protected by official immunity. We hold Officer Barrott has official immunity.

## II.

Respondent city and amicus League of Minnesota Municipalities argue that if Officer Barrott has official immunity, this immunity inures to the benefit of the City of Crystal.[4] The court of appeals did not dis-

---

2. In an attempt to show that police chases should not be immunized, plaintiffs cite the sections of our Motor Vehicle Code which regulate the operation of "emergency vehicles." *See, e.g.,* Minn.Stat. § 169.03, subd. 2, and § 169.17. The issue, however, is not about how a police car should be driven during a pursuit, but whether a pursuit should have been undertaken in the first place or discontinued at some point after being undertaken. The Motor Vehicle Code does not cover this subject.

3. The Crystal Police Department had a written Vehicular Pursuit Policy which provided in part:

   13. Officers involved in a pursuit must continually question whether the seriousness of the violation reasonably warrants continuation of the pursuit.

14. A pursuit should be discontinued when there is a clear danger to the pursuing officers or the public * * *.
15. The pursuing officer must consider present danger, seriousness of the crime, length of the pursuit, and the possibility of identifying the suspect at a later time when determining whether or not to continue the pursuit.
The policy also covers the use of helicopters, radio procedures, the coordination of multiple police units in a particular pursuit, and other matters. Officer Barrott, the defendant in this case, was the compiler of the policy.

4. There is no merit to plaintiffs' argument that Officer Barrott is not being sued in his "individual capacity," whatever that means. See the court of appeals' disposition of this argument. *Pletan v. Gaines*, 481 N.W.2d 566, 569 (Minn. App.1992).

cuss this issue, impliedly holding that the city had this immunity vicariously.

There have been numerous cases in this court where municipalities have, impliedly at least, received the benefit of their employees' personal immunities. Generally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without any explanation. *See, e.g., Northernaire Productions, Inc. v. County of Crow Wing,* 309 Minn. 386, 390, 244 N.W.2d 279, 282 (1976); *Johnson v. Morris,* 445 N.W.2d 563, 569 (Minn. App.1989), *aff'd,* 453 N.W.2d 31 (Minn. 1990); *Koderick v. Snyder Brothers Drug, Inc.,* 413 N.W.2d 856 (Minn.App.1987), *overruled by Kaiser v. Memorial Blood Center of Minneapolis, Inc.,* 486 N.W.2d 762 (Minn.1992). Recently, however, in *Holmquist v. State,* 425 N.W.2d 230, 233 n. 1 (Minn.1988), we noted, "[N]ot infrequently a governmental entity is required to compensate for the harm done by a public official even though the official is not held personally liable," citing Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Colum.L.Rev. 1175, 1186–87 (1977). While this statement is dicta, it suggests this court might under some circumstances find an exception to vicarious official immunity.

As the Bermann article points out, some courts extend official immunity to cover the municipal employer while others do not. *Id.* at 1182–88. Those courts that do extend the immunity usually do so on the theory of *respondeat superior,* reasoning that it would be anomalous to impose liability on a municipality for the very same acts for which its employee receives immunity.[5] On the other hand, some courts appear to be denying vicarious official immunity on the grounds that a governmental entity can only take advantage of its own immunities.[6] In the final analysis, whether to extend official immunity to the governmental employer is a policy question. Here, the need to protect the public must be balanced against the concern that the public not be put unduly at risk.

If vicarious official immunity does not apply, the conduct of the immunized police officer must still be reviewed in order to impose liability on the employer. But then the purpose of official immunity, which is to shield an officer's exercise of independent judgment from civil adjudication, is, as a practical matter, defeated. Police officers may justifiably think their own employment performance is being evaluated and consequently may decline to engage in pursuit when pursuit is indicated. It would seem, too, if criminals get the impression that by speeding away they can discourage pursuit, they will act on that impression and speed away.

It is of some significance, we think, that the legislature in dealing with the problem of injuries to third persons in high-speed pursuits has impliedly, at least, recognized vicarious official immunity. Thus the Crime Victims Reparations Act expressly provides that the state will provide economic loss compensation to third party victims for "injury or death caused by a driver of a motor vehicle in the immediate act of fleeing the scene of a crime in which the driver knowingly and willingly participated." Minn.Stat. § 611A.52, subd. 6(c)(3) (1992).

Tort liability seeks to compensate the injured and to deter wrongdoing. Arguably, if there is immunity from tort liability, there is still the deterrence of internal peer review by the employer, as well as the public scrutiny which accompanies much police activity. As for compensation, the

---

5. *See, e.g., Zimmerman v. New York,* 52 Misc.2d 797, 276 N.Y.S.2d 711 (N.Y.App.1966); *Mulligan v. Grace,* 136 Ariz. 483, 666 P.2d 1092 (Ariz.App. 1983); *Keogh v. Bridgeport,* 187 Conn. 53, 444 A.2d 225 (1982). *See also* 57 Am.Jur.2d *Municipal, County, School and State Tort Liability* § 9 (1988).

6. Two cases often cited are *Carter v. Carlson,* 447 F.2d 358, 367 (D.C.Cir.1971); *Lipman v. Brisbane Elementary School District,* 55 Cal.2d 224, 11 Cal.Rptr. 97, 359 P.2d 465 (1961). *See also Bridges v. Alaska Housing Authority,* 375 P.2d 696 (Alaska 1962); *Taplin v. Town of Chatham,* 390 Mass. 1, 453 N.E.2d 421 (1983); *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980); *Maynard v. City of Madison,* 101 Wis.2d 273, 304 N.W.2d 163 (App.1981). In *Maynard* and *James,* the Wisconsin and Maryland courts used an agency, rather than a *respondeat superior,* analysis.

real culprit, of course, is the fleeing criminal suspect, and because motor vehicles are involved, there ordinarily will be either first- or third-party auto insurance available for the innocent victim as required by the No–Fault Act. (Thus in this case, we are advised plaintiffs recovered some funeral expense from the Crime Victims Reparations Board and also recovered under the first-party coverage of their own auto policy.)

This is not, of course, to condone poor judgment resulting in reckless "Dirty Harry"-style car chases. A high-speed chase in congested traffic to catch someone guilty of only a minor property crime or a mere traffic infraction would be imprudent. Indeed, the city's established pursuit policy so states. On the other hand, pursuit of an armed and dangerous suspect who has just shot a store clerk or sexually assaulted a victim might well justify an aggressive pursuit. Yet so many factors come into play in any car chase that to try and fashion a bright-line exception to vicarious official immunity in instances towards the lower end of the risk continuum would, we conclude, create more problems than it solves.[7]

We hold, therefore, that with respect to high-speed police pursuits, the police officer's official immunity extends to the officer's public employer. Consequently, we do not need to reach the next issue raised, namely, whether Officer Barrott's pursuit was, as a matter of law, not a proximate cause of decedent's fatal injury.

### III.

■ Finally, the defendant school district claims it should have discretionary function immunity for plaintiffs' claim.

We agree, as did the trial judge and the court of appeals.

The school district has an established, written district-wide student transportation policy which provides that "[p]upils are responsible for being on the bus at the designated departure time at the school." At Lakeview Elementary, the practice was to dismiss its 600 students in three groups of about 200 students each, with the teachers accompanying the students to either the "bus line" or the "walkers line." Plaintiffs' claim is that the school district had a responsibility "for seeing to it that students get on the right bus," and because this duty was breached, Shawn Pletan happened to be at the street intersection when the Gaines car came by. Putting aside the issue of proximate cause if there was any negligence, the question presented is whether discretionary function immunity immunizes the school district from plaintiffs' claim.

Discretionary function immunity protects a municipality from tort liability for "any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1990) (municipal immunity). *See also* Minn.Stat. § 3.736, subd. 3(b) (1990) (state immunity). As an aid in determining when an immune discretionary function is involved, this court has employed the distinction between policymaking activities (which are protected) and operational activities (which are not). *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988). We have cautioned that this test is not precise, that there are gray areas, and that the underlying consideration is "whether the conduct

7. The record in this case indicates that the Crystal Police Department engages in at least one high-speed pursuit a week. Most pursuits originate in other jurisdictions and the Crystal police are called in to assist, frequently discontinuing the pursuit in accordance with police department policy when more than three pursuit units would be involved. According to Officer Barrott, apparently, prior to this case there had been no instances of injury to an uninvolved third person.

Officer Barrott testified that traffic was "moderate to heavy" and that there were no pedestrians until the intersection where Shawn Pletan appeared. The officer testified he approached intersections with caution, checking to see if other traffic was yielding to his red lights and siren. Gaines' car and the squad car following, while southbound, did their weaving in and out entirely in the two southbound lanes. Apparently the officer hoped that the moderate to heavy traffic would eventually bring Gaines to a stop, and, at one point, it appeared Gaines would abandon his car and flee on foot; instead, Gaines rammed between two stopped cars and continued on.

involves the balancing of public policy considerations in the formulation of policy."
*Id.* at 234.

In this case, the school district's formulation of a bus transportation policy involved many factors, including safety, cost, and the educational goal of instilling a sense of personal responsibility in the students. Clearly this decision is protected by discretionary function immunity. Plaintiffs so concede. Likewise Lakeview Elementary's supplementation of the district policy by requiring teachers to accompany the students out of the school building is a protected activity. Again, plaintiffs concede that the school's practice might be so understood. Plaintiffs contend, however, that making sure the children assigned to buses get on the bus is a day-to-day, operational-level implementation of an established policy, which is not protected by discretionary function immunity.

The distinction between "making" and "implementing" policy is not so simple as plaintiffs would have it. Until people carry out a governmental policy, by doing or not doing something, the policy is a dead letter. Discretionary function immunity would afford little comfort if it did not extend to some of the consequences of the policy itself. Whether certain consequences are immune depends, as we have noted, on whether the consequential conduct itself involves the balancing of public policy considerations in the formulation of policy.

The school district's position is quite different from the city's position. Here plaintiffs' claim is that the school was responsible for "seeing to it" that bus riders get to their buses. This claim is basically a disagreement with the school district's policy which says boarding the proper bus is the students' personal responsibility and, therefore, is really an attempt to have the courts reexamine the policy considerations that entered into the school district's policy. Discretionary function immunity protects the school district from such reassessments. If, with respect to Lakeview Elementary, the claim is that it should have had more teachers accompanying the students to the buses, this, too, involves a

balancing of the factors that enter into the formulation of Lakeview's policy. We hold, therefore, that plaintiffs' claim against the defendant school district is covered by the district's discretionary function immunity.

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.