Lillian Helena KARI, petitioner, Appellant,

v.

CITY OF MAPLEWOOD, et al., Respondents.

No. C8–97–823.

Supreme Court of Minnesota.

Aug. 27, 1998.

Pierre N. Regnier, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for Respondents.

Patrick K. Horan, Meshbesher & Spence, Ltd., Woodbury, for Appellant.

## OPINION

STRINGER, Justice.

We consider once again whether the complex concept of official immunity applies to the conduct of a government official—here in the context of a public employee driving an emergency vehicle in response to an emergency call. Paul Everson, a paramedic employed by respondent City of Maplewood, was driving an emergency vehicle to the scene of a medical emergency when his vehicle struck appellant Lillian Helena Kari as she crossed the street in a marked crosswalk. In Kari's suit for personal injuries, the district court granted Everson's and the city's motion for summary judgment, concluding that because Everson was operating the emergency vehicle within the scope of his employment, he was engaged in discretionary conduct entitling him to official immunity. The court of appeals affirmed. We agree that Everson's conduct falls within the broad category of immunity granted to officials responding to emergencies and therefore we affirm the court of appeals.

Everson worked for the City of Maplewood as a community service officer and paramedic. On November 22, 1994, while near the intersection of White Bear Avenue and Lydia

Avenue in Maplewood, he received a medical emergency call regarding an unconscious person. He testified that he immediately turned on his emergency siren and flashers. Everson headed north on White Bear Avenue and then turned right at Lydia Avenue, heading east. Witnesses testified that his siren was activated at that time, and one of those witnesses testified that the emergency flashers were activated.

When Everson noticed Kari as she crossed Lydia Avenue in a marked crosswalk heading south, she was in the westbound lane closest to the center yellow line. He switched lanes from the lane closest to the median into the lane closest to the curb. As Kari was standing in the center of Lydia Avenue, Everson changed his siren from a wail to a yelp and took his foot off the accelerator. He testified that as he slowed down, Kari looked at him and then ran in front of the emergency vehicle. Everson hit the brakes and his vehicle's front bumper struck Kari. Accident reconstructionists estimated that he was going approximately 40 miles an hour when he applied the brakes. Kari received serious injuries and has no memory of the accident. Everson testified that at the time of the accident he was not thinking about whether he had the right of way to proceed through the crosswalk.

Kari filed suit against Everson and the city, alleging that Everson had negligently operated the emergency vehicle. Everson and the city moved for summary judgment, arguing that Everson's operation of the emergency vehicle in response to the medical emergency was discretionary conduct protected by official immunity and that the city was consequently entitled to vicarious official immunity. The district court concluded that Everson's operation of his emergency vehicle was discretionary conduct entitling him to official immunity based on the Minnesota Court of Appeals decision in Nisbet v. Hennepin County, where the court held that a county ambulance driver operating his vehicle under emergency circumstances is entitled to official immunity. See 548 N.W.2d 314 (Minn.App.1996). Thus the district court granted summary judgment to Everson and the city. The court of appeals affirmed, also concluding that its decision in Nisbet controlled the outcome of the case and that Kari had failed to show that Everson had violated a traffic regulation statute, a willful or malicious action that would preclude application of official immunity.

■ On appeal to this court Kari contends that Everson violated a traffic regulation statute requiring all vehicles, including emergency vehicles, to yield the right-of-way to a pedestrian in a crosswalk and therefore Everson is not entitled to official immunity. The application of immunity is a question of law subject to de novo review. Johnson v. State, 553 N.W.2d 40, 45 (Minn.1996).

■ The common law doctrine of official immunity protects government officials from suit for discretionary actions taken in the course of their official duties. Janklow v. Minnesota Bd. of Examiners for Nursing Home Adm'rs, 552 N.W.2d 711, 716 (Minn. 1996.) Official immunity applies when the official's conduct involves the exercise of judgment or discretion, but malicious conduct is not immunized. Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn.1988). In the absence of malice, the critical issue in a claim of official immunity is whether the public official's conduct is discretionary or ministerial. Id. A discretionary act requires the exercise of individual judgment in carrying out the official's duties. See Janklow, 552 N.W.2d at 716. In contrast, a ministerial act is "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." Cook v. Trovatten, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937) (citation omitted).

We have recognized that an official who is responding to an emergency must weigh myriad factors in making virtually instantaneous decisions about how to respond. See, e.g., Pletan v. Gaines, 494 N.W.2d 38, 41 (Minn.1992); Watson ex rel. Hanson v. Metropolitan Transit Comm'n, 553 N.W.2d 406, 415 (Minn.1996). In Pletan v. Gaines, where a police officer's decision to engage in a high speed chase to pursue a fleeing criminal was challenged, we stated that when an official must make instantaneous decisions often on the basis of incomplete information, "[i]t is difficult to think of a situation where the exercise of significant, independent judgment and discretion would be more required." 494

N.W.2d at 41. Police officers' conduct in these emergency circumstances is immune because "the community cannot expect its police officers to do their duty and then to second-guess them when they attempt conscientiously to do it." *Id.*

We hold that the considerations leading to the immunity of police officers in emergency circumstances also apply to paramedics driving emergency medical vehicles. The dark shadow of liability for conduct in responding to an emergency would conflict with the policy we firmly established in *Pletan* that absent malice, drivers of vehicles engaged in emergency missions of public safety should not be subject to second-guessing in the operation of their vehicles.

Kari acknowledged that Everson was exercising discretion in responding to the emergency. Thus we consider whether Everson's discretionary conduct falls within the malice exception to official immunity. In the immunity context malice means "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State,* 472 N.W.2d 100, 107 (quoting *Carnes v. St. Paul Union Stockyards Co.,* 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)). The doing of a wrongful act in responding to an emergency thus does not end the inquiry for purpose of determining whether the public employee's conduct is immune. If it did, the concept of immunity would be eviscerated. The inquiry must go on to determine whether in doing the wrongful act while responding to an emergency, the public employee so unreasonably put at risk the safety and welfare of others that as a matter of law it could not be excused or justified—only under such circumstances will malice be found and immunity be lost.

Authorized emergency vehicles on emergency runs are explicitly exempted from complying with certain traffic regulations permitting them to travel through red lights and stop signs, drive against the flow of traffic, and exceed the speed limit so long as the driver has due regard for safety of persons using the street. Minn.Stat. §§ 169.03, subds. 1–4; 169.17 (1996). Kari contends that these exemptions comprise the exclusive list of traffic regulations that emergency vehicles may disregard while on emergency runs and that any other violation of traffic regulations constitutes malice, barring immunity. She therefore argues that Everson was bound by the statutory provision in force at the time of the accident requiring all drivers to yield the right-of-way to a pedestrian in a crosswalk and that his failure to yield constituted willful or malicious conduct not protected by official immunity. *See* Minn.Stat. § 169.21., subd. 2(a).

We reject Kari's contention. First, Kari's argument, adopted by the dissent, that an exemption from the traffic regulation law establishes the limits for immunity has no logical basis. That the legislature has decided that emergency vehicle drivers may exceed the posted speed limit, proceed against traffic or through a red light without violating the traffic laws is immaterial to the public policy we have sought to uphold in determining whether official conduct at an operational level for emergency vehicle drivers should be immune:

> To expose police officers to civil liability whenever a third person might be injured would, we think, tend to exchange prudent caution for timidity in the already difficult job of responsible law enforcement.

*Pletan,* 494 N.W.2d at 41. The same rationale applies to drivers on medical emergencies. Legislative exemptions from traffic regulations are simply irrelevant to the policy concerns we expressed in *Pletan.*

Second, if we were to adopt the principal that only those traffic regulations specifically identified as not applying to vehicles on emergency missions were the only ones that could be violated with immunity, we would create an anomaly in the law—a police officer charged with common law negligence in failing to act as a reasonable and prudent police officer in the same or similar circumstances in responding to an emergency would be immunized from suit, absent malice, *e.g., Pletan,* 494 N.W.2d at 42, but a police officer on an emergency mission charged with a traffic violation as the basis of a claim of negligence (other than those specifically exempted) would not. The claim based on common law negligence would be immunized, but the claim based on a statutory violation would

not—a difference in outcome that has no rationale basis.

Third, a restrictive application as urged by Kari would lead to absurd results. For example, it is a traffic violation to operate a vehicle with a cracked windshield, but the traffic regulation statutes do not exempt emergency vehicles from this requirement. Minn.Stat. § 169.71, subd. 1 (1996). There is obviously no policy served by denying official immunity to a paramedic while on an emergency run because his vehicle had a cracked windshield, but on the other hand granting official immunity when he drove through a red light or against the flow of traffic.

For public employees driving on emergency missions, immunity should not turn on whether specific traffic regulations do or do not apply to public employees driving an emergency vehicle responding to an emergency, but rather on whether the wrongful act so unreasonably put at risk the safety and welfare of others that as a matter of law it could not be excused or justified. Here, no evidence was produced that Everson knowingly or deliberately proceeded through the crosswalk in malicious disregard of Kari's right to be there. Everson's deposition testimony reveals that he was enroute to assist an unconscious person and was not thinking about whether he had the right of way to proceed through the crosswalk. He explained that as he approached the crosswalk he made eye contact with Kari and believed she had seen his emergency vehicle before she moved in front of it. We conclude that even if Everson failed to yield the right of way to Kari, given the circumstances—the nature of the emergency, the precautions taken in activating emergency lights and sirens, and Everson's cautious driving as he approached the crosswalk—the failure to yield was justified.

Denying Everson official immunity would have a chilling effect on the discretion to be exercised by emergency vehicle drivers enroute to medical emergencies, and would conflict with our well-established law respecting the independent judgment that must be exercised by public servants in emergency situations.

Affirmed.

GILBERT, J. took no part in the consideration or decision of this case.

PAUL H. ANDERSON, Justice (dissenting).

I respectfully dissent. I agree with the majority that we have created a complex body of law granting immunity to certain actions of government officials but not to others. This point is confirmed when the majority can render from this body of law a well-reasoned opinion concluding that the driver of an emergency vehicle who sees a pedestrian in a crosswalk where no traffic signal is in place need not yield or even think about that pedestrian. I understand the majority's concern that failing to find immunity in a case such as this may have a chilling effect on the responses of emergency vehicle drivers on route to a medical emergency, but I am not swayed by this concern. Common sense as well as Minnesota traffic regulations dictate that when the driver of an emergency vehicle sees a pedestrian in a crosswalk—in this case, a 79–year–old woman attempting to cross a four-lane street—he does not have the right to decide whether to yield. Instead, the driver must yield to the pedestrian so that the pedestrian may be safe from harm.

In analyzing any immunity issue, the first step is to identify the specific government conduct at issue. *Watson ex rel. Hanson v. Metropolitan Transit Comm'n,* 553 N.W.2d 406, 415 (Minn.1996). The majority characterizes the conduct at issue as paramedic Everson's operation of an emergency medical vehicle in emergency circumstances. I contend that the court must start with a narrower characterization of Everson's conduct: his recognition that there was a pedestrian in the crosswalk with no traffic signal in place and his ensuing decision not to yield the right-of-way. Because Everson's failure to yield to the pedestrian in the crosswalk was proscribed by statute, his conduct cannot be construed as discretionary and thus official immunity should be denied.

Our decisions in the area of official immunity recognize that public officials have a duty to adhere to statutes and ordinances. *See Wiederholt v. City of Minneapolis,* 581 N.W.2d 312 (Minn.1998); *Waste Recovery Co-op. v. County of Hennepin,* 517 N.W.2d 329, 332 (Minn.1994). In the arena of traffic statutes, the legislature has decided that traffic regulation provisions apply to all drivers except where there are specific exemptions for authorized emergency vehicles. Minn.Stat. § 169.03, subd. 1 (1996). An emergency vehicle may go through red lights and stop signs if its flashing lights and sirens are activated. *Id.,* subd. 2. An emergency vehicle may also drive against traffic and may park or stand at the scene of a reported emergency despite prohibiting signs or laws. *Id.,* subds. 3, 4. Further, an emergency vehicle need not obey speed limits as long as its flashing lights and sirens are activated, although "[t]his provision does not relieve the driver * * * from the duty to drive with due regard for the safety of persons using the street * * *." Minn.Stat. § 169.17 (1996). In 1994, at the time of Kari's injury, there were no other specific exemptions from traffic regulations for emergency vehicles.

In 1994, the following provision set forth in mandatory language a driver's duty to yield to a pedestrian in a crosswalk:

Where traffic control signals are not in place or in operation the driver of a vehicle *shall* yield the right-of-way, *slowing down or stopping if need be to so yield,* to a pedestrian crossing the roadway within a crosswalk but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

Minn.Stat. § 169.21, subd. 2 (1994) (emphasis added). Under the plain language of this provision and the provisions setting forth the list of exemptions for emergency vehicles, drivers of emergency vehicles are required to yield to a pedestrian in a crosswalk where no traffic signal is in place.

The majority's contention that the list of statutory exemptions for emergency vehicles is not an exclusive list contradicts the plain language of Minn.Stat. § 169.03, subd. 1, which states explicitly that "[t]he provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by * * * [a] city * * * subject to *such specific exemptions* as are set forth in this chapter with reference to authorized emergency vehicles." (Emphasis added.) Because all vehicles are required by Minn.Stat. § 169.21, subd. 2, to yield to pedestrians in crosswalks and because there is no specific exemption from this requirement for emergency vehicles, the traffic regulation statutes require emergency vehicles to yield. I am not willing to hold, as the majority does, that traffic regulation statutes or any other statutory mandates have no relevance to the question of whether an official's conduct is immune. Everson's failure to yield despite knowing that Kari was in the crosswalk is not immune conduct. The majority errs in concluding otherwise. I come to no conclusion about whether Everson's conduct was negligent—that is for the lower court or a jury to decide. But it is clear to me that Everson's conduct is not immune from suit as a matter of law.

Moreover, I contend that the majority construes *Pletan v. Gaines* too broadly and applies it here to facts that are readily distinguishable. In *Pletan,* a fleeing suspect—not the pursuing police officer—killed a seven-year-old boy as the boy crossed an intersection in a crosswalk. 494 N.W.2d 38, 39 (Minn.1992). The officer, in contrast, noticed the boy and applied his brakes, slowing to 5 or 10 miles per hour. *Id.* We granted immunity based solely on the officer's decision to engage in the high speed chase in the first place; we did not come to any conclusions about whether the officer's decisions made while driving were immune from suit. *Id.* at 40–41. Unless *Pletan* is read to apply far beyond its facts, it does not appear to lead to the majority's conclusion that Everson's decision not to yield is immune conduct.

Everson stated that he did not think about Kari or her right to cross in the crosswalk. I contend that once Everson was aware of Kari's presence, he should have thought about her right to be there. I would hold that once Everson saw Kari in the crosswalk, he no longer had the discretion not to yield

right-of-way to her and thus his failure to yield opens his conduct to suit.