Richard N. **FEDKE**, Respondent,

v.

**CITY OF CHASKA, et al.,** Appellants.

No. A04–166.

Court of Appeals of Minnesota.

Sept. 7, 2004.

James L. Berg, Chaska, MN, for respondent.

Joseph E. Flynn, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellants.

Considered and decided by RANDALL, Presiding Judge, WILLIS, Judge, and ANDERSON, Judge.

## OPINION

RANDALL, Judge.

Respondent Richard Fedke (a civilian) sued appellants, the city of Chaska and the Chaska Police Department (the city), based on injuries he received while participating in a simulation involving a school bus accident. Fedke asserted that during the simulation, an officer from the Chaska Police Department willfully and negligently pushed him to the ground. The city moved for summary judgment based on vicarious official immunity. The district court denied the motion. On appeal from the district court's denial of summary judgment, the city argues that the police officer's actions involved the exercise of discretion and were not done with malice. Concluding that the essential facts in this case are not in dispute and that the matter is proper for summary judgment, we find, as a matter of law, that official immunity protects a police officer and vicarious official immunity protects Chaska and its police department. We reverse.

## FACTS

On August 14, 2000, the Carver County Department of Emergency Services (CCDES) and several area emergency services agencies participated in a "critical incident simulation" involving a school bus accident. CCDES organized and directed the simulation. CCDES contacted, among other emergency services agencies, the Chaska Police and Fire Departments, requesting their assistance in the simulation.

Ben Anderson is a police officer with the Chaska Police Department. One to two weeks prior to the simulation, Anderson and other individuals representing various emergency service agencies attended a meeting organized by CCDES. At the meeting, Anderson was told that he would be the first officer to arrive at the scene of the simulation.

At the time of the simulation, respondent Richard Fedke was 70 years old and worked as a bus driver for the Salden Bus Company, which served the Chaska School District. The Salden Bus Company's office manager asked Fedke to volunteer in the simulation. On August 14, 2000, Fedke and other volunteers from the Salden Bus Company met at the Chaska Middle School with CCDES county officials in charge of the simulation. The county officials informed the volunteers that the sim-

ulation would involve a school bus and car accident and that several different emergency services departments would be at the scene. Fedke and other adult volunteers were told to play the role of the parents/grandparents in the simulation. CCDES personnel told the adult volunteers that those playing the roles of first responders would be slow to start so the adult volunteers, acting in their roles as emotionally upset parents and grandparents, were to do what they could with verbal prompting to put pressure on the first responders to "get moving." This would simulate the scene if there were to be a real accident with children on the school bus and parents and grandparents hurrying to the scene. The adult volunteers were not instructed to be physically aggressive, but later to use oral prompting.

The simulation was videotaped by the Chaska School District. Anderson's participation in the simulation commenced when he was radioed by dispatch that there was a school bus accident in Chaska. When Anderson arrived at the scene, he told dispatch his location and observation that a school bus was turned over on its side and numerous victims were at the scene. Anderson observed that the bus was full of children who were dressed to depict accident victims. He requested that dispatch send paramedics and ambulances. Anderson retrieved his medical bag from his squad car and headed toward the bus.

Fedke observed a Chaska Fire Department vehicle arrive at the scene and confronted the occupants. He approached the driver of the fire department vehicle and stated, "Let's go. Hurry up. Let's get the kids out." Fedke stated that he left the fire department vehicle because the occupants were not responding to his prompting.

Fedke then ran to the back of the school bus and arrived at its rear door shortly after Anderson. Fedke is six feet tall and, at the time of the simulation, weighed 190 pounds. As Anderson was attempting to open the back door to the school bus, Fedke initiated contact with Anderson. Fedke placed his hand on Officer Anderson's back and began pushing Anderson. Anderson stated that he was not familiar with Fedke and had not been informed that anyone would make attempts to physically interfere with official personnel at the scene. Anderson told Fedke to "back up." Fedke did not back up and continued to push against Anderson.

Anderson pushed Fedke away from him to try to establish space between him and Fedke. Anderson then returned to the back door of the school bus to try to enter, and Fedke immediately began again pushing against Anderson. According to Anderson, it appeared that Fedke's level of physical aggressiveness was even greater than before. Fedke admitted that he pushed against Anderson to get to the back door of the bus. Fedke admitted that he pushed against Anderson "like an offensive tackle."

Because Fedke continued to push against him, Anderson decided to place Fedke on the ground through a "controlled takedown." Anderson used a "leg sweep" to pull Fedke's legs out from under him and then held onto Fedke so he would go down to the ground in a controlled fall. After the takedown, Anderson did not have any other physical contact with Fedke. The video shows that Anderson never hit, kicked, or struck Fedke. Fedke agreed that he was not kicked and did not receive any bruises during the leg sweep.

Fedke sued appellants, the City of Chaska and the Chaska Police Department (the city), alleging that Anderson "willfully and

negligently forcibly grabbed [Fedke] by the shoulders and pushed [Fedke] to the ground." Fedke sought damages for injuries sustained during the simulation. The city brought a motion for summary judgment alleging, among other things, that Fedke's claim was barred by the doctrine of vicarious official immunity. The district court issued an order denying the city's motion for summary judgment. The court made no findings of fact or conclusions of law. Fedke failed to file a brief properly, and this appeal proceeds pursuant to Minn. R. Civ.App. P. 142.03.

## ISSUE

Is the City of Chaska protected by vicarious official immunity?

## ANALYSIS

 On appeal from summary judgment, we determine whether the case raises genuine issues of material fact and whether the district court erred in its application of the law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997). The reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). A genuine issue for trial must be established by substantial evidence. *Id.* at 70.

 The district court denied the city's motion for summary judgment based on vicarious official immunity. Whether a municipality or its officials are protected by official immunity is a legal question, which appellate courts review de novo. *Johnson v. State,* 553 N.W.2d 40, 45 (Minn. 1996).

 As Ben Anderson, the police officer in this case, was not named as a defendant in this action, we first address whether he was entitled to official immunity. *See Sletten v. Ramsey County,* 675 N.W.2d 291, 300–01 (Minn.2004) (stating that although the state official is not named in the suit, the nature of the official's conduct determines the applicability of vicarious official immunity). Official immunity protects government officials from suit for discretionary actions taken in the course of their official duties. *Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs,* 552 N.W.2d 711, 715–16 (Minn.1996). "Official immunity is intended to protect public officials from the fear of personal liability that might deter independent action." *Id.* at 715 (quotations omitted). "[A] public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (quotations omitted). Whether official immunity is available depends on whether the alleged acts were (1) discretionary or ministerial, and (2) malicious or willful. *Davis v. Hennepin County,* 559 N.W.2d 117, 122 (Minn.App.1997), *review denied* (Minn. May 20, 1997).

 The city argues that Anderson's actions involved discretionary conduct. Official immunity applies only when an official's conduct involves the exercise of judgment or discretion. *Elwood,* 423 N.W.2d at 677. By contrast, ministerial conduct is absolute, certain, and involves the mere execution of a specific duty under designated facts. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 315 (Minn.

1998). Police officers are typically "classified as discretionary officers entitled to [official] immunity." *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990). The City of Chaska points to two unpublished decisions of this court when we held that in simulated/training exercises, the police officers' conduct was discretionary. *See Clingan v. Anoka County,* No. CX–02–1049, 2003 WL 139392, at *3, (Minn.App. Jan.21, 2003); *Armstrong v. County of Sherburne,* No. C0–00–732, 2000 WL 1809075, at *3, (Minn.App. Dec.12, 2000).

In *Clingan,* a retired police officer was bitten by a dog while participating in a dog and dog handler training exercise. 2003 WL 139392, at *1. The court noted that Deputy Knealing, an active Anoka County Deputy Sheriff participating in the drill, had to determine (1) whether to use a volunteer for the exercise; (2) the type of equipment to use; (3) how to handle the dog; and (4) how to protect the safety of everyone involved in the training exercise. *Id.* at *3. This court stated that "[a]lthough this accident took place during a training exercise while Knealing and [dog] were neither on duty nor facing an emergency, these factors are not necessary to apply the immunity doctrine." *Id.* The court affirmed summary judgment in favor of Anoka County, concluding that because the dog handler was entitled to official immunity, "the county is also entitled to vicarious immunity protection." *Id.*

In *Armstrong,* a girl scout leader was injured while participating in a police demonstration involving a dog. 2000 WL 1809075, at *1. The court found that the deputy had to decide whether to proceed using a volunteer because the person who normally played the role of "agitator" was unavailable. *Id.* at *2. This court concluded that "the deputys conduct . . . required the exercise of his judgment and discretion and is, therefore, entitled to official immu-

nity." *Id.* The court affirmed summary judgment in favor of Sherburne County on the basis that the county was entitled to vicarious official immunity. *Id.* at *3.

■ The setting, meaning "simulation/training" are virtually identical to our setting, and the logic in *Clingan* and *Armstrong* is persuasive. In this case, Carver County, which had not been through a critical school bus accident simulation before, conducted the simulation for the purpose of training area emergency services to respond to critical incident scenarios. For his part, the simulation required Officer Anderson to make decisions about the safest and best way to respond to the critical incident situation. When Anderson was confronted with Fedke, who portrayed (properly) a persistent and frantic parent/grandparent concerned for his child/grandchild, Anderson had to balance Fedke's emotions with the needs of all the children trapped on the bus. Anderson had to exercise judgment and discretion for the protection of all the children on the bus. Like the police officers' conduct in both *Clingan* and *Armstrong,* we conclude that Anderson's conduct required judgment and discretion. On this record, even for purposes of summary judgment, this situation easily fits within the scope of activities protected by official immunity.

■ The city also points out that Anderson's actions were neither willful nor malicious. Even though a police officer's actions are discretionary, an officer is not shielded from suit if his actions are willful or malicious. *Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991). A public official commits willful or malicious conduct by "intentionally commit[ing] an act that he or she then has reason to believe is prohibited." *Id.* at 107. The facts in this case are undisputed, and the record contains no evidence that Anderson acted with malice. Anderson, as part of his duties as a police

officer, was reacting to a (training) emergency situation and, as part of that, he decided to stop Fedke from interfering with his job to open the back of the school bus to retrieve the children. With Fedke's persistence in playing the part of an emotionally involved grandparent, we cannot say that, on these facts, Anderson acted improperly in any way in getting Fedke to the ground in a "controlled takedown." As stated previously, Fedke agrees that he was not kicked and did not receive any bruises during the leg sweep that brought him to the ground and under Officer Anderson's control.

Even viewing the record in the light most favorable to Fedke, the record does not present a substantial factual dispute as to whether Anderson's conduct (a) involved the exercise of discretion, and (b) was willful and malicious. Anderson is protected by the doctrine of official immunity.

 Having concluded that Anderson is entitled to official immunity, we next address whether the city is entitled to vicarious official immunity. *Sletten*, 675 N.W.2d at 303–05 (discussing the extension of vicarious official immunity to governmental entities after determining whether a government employee has been allowed official immunity). The district court apparently determined that Anderson was not entitled to official immunity and, thus, barred appellants from asserting vicarious official immunity. Official immunity protects public officials acting in their official capacity from suit. Vicarious official immunity protects the governmental entity from suit when "the threat of potential liability [would] unduly inhibit the exercise of discretion required of public officials in the discharge of their duties." *Watson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 414 (Minn.1996)

(quotations omitted). "Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity." *Dokman v. Hennepin County*, 637 N.W.2d 286, 297 (Minn.App.2001) (quoting *Wiederholt*, 581 N.W.2d at 316), *review denied* (Minn. Feb. 28, 2002).

Anderson exercised discretion and acted without malice when he participated in the simulation, so he was entitled to official immunity. Common sense tells us that the immunity has to extend to his employer. To grant the officer official immunity, but then allow a direct suit against the officer's employer would inhibit employees from participating in situations, such as the training exercise here, so as not to get in trouble with their employer. *See Pletan v. Gaines*, 494 N.W.2d 38, 42–43 (Minn.1992) (holding that official immunity extends vicariously to city because police officer's decision to engage in car chase and to continue chase involves weighing of many factors, and failing to extend immunity may cause police officers to decline to engage in pursuit when pursuit is indicated). Put another way, vicarious liability has to apply in situations when, if vicarious immunity to the employer were not granted, the purpose of official immunity would be defeated. *Anderson v. Anoka–Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 664–65 (Minn.2004); *Ireland v. Crow's Nest Yachts, Inc.*, 552 N.W.2d 269, 272 (Minn. App.1996)Search Term End, *review denied* (Minn. Sept. 20, 1996).

We conclude that the City of Chaska and the Chaska Police Department are protected by vicarious official immunity.

## DECISION

The essential facts in this case are undisputed. The police officer exercised dis-

cretion when he participated in the simulation and his conduct was not willful or malicious. The police officer's conduct was protected by official immunity, and, therefore, the city and its police department are entitled to summary judgment based on vicarious official immunity.

**Reversed.**