Joetta DRAKE, as legal guardian for Adrian V. COTTON, an incapacitated person, and the Minnesota Department of Human Services, Plaintiffs,

v.

Francis D. KOSS, individually and in his official capacity; Dennis Johnson, individually and in his official capacity; Bonnie E. Case, individually and in her official capacity; Jane Lilienthal, individually and in her official capacity; Edward Springman, individually and in his official capacity; Katherine Jones, individually and in her official capacity; Leon Koentopf, individually and in his official capacity; Carol Kirchoff, individually and in her official capacity; and McLeod County. Defendants.

No. Civ.03–2964 JNE/JSM.

United States District Court,
D. Minnesota.

Jan. 3, 2005.

William J. Maddix, and Chris A. Messerly, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, for Plaintiffs Joetta Drake and the Minnesota Department of Human Services.

Jon K. Iverson, and Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, MN, for Defendants Dennis Johnson, Bonnie E. Case, Jane Lilienthal, Edward Springman, Katherine Jones, Leon Koentopf, Carol Kirchoff, and McLeod County.

## ORDER

ERICKSEN, District Judge.

This is an action by Joetta Drake, as legal guardian for Adrian V. Cotton, an incapacitated person, and the Minnesota Department of Human Services (collectively, Plaintiffs) against several individuals [1] in their individual and official capacities and against McLeod County (County) after Cotton attempted to commit suicide while he was an inmate in McLeod County jail. Plaintiffs assert claims under 42 U.S.C. § 1983 (2000) for violations of the Eighth and Fourteenth Amendments and under Minnesota law for negligence. The matter is before the Court on the Individual Defendants and County's Joint Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

---

**1.** For convenience, the Court will refer to Bonnie E. Case, Jane Lilienthal, Edward Springman, Katherine Jones, Leon Koentopf, and Carol Kirchoff collectively as the Individual Defendants. Plaintiffs' claims against Dr. Koss have been dismissed with prejudice, and Plaintiffs have agreed to dismiss the claims against Dennis Johnson because he was on vacation during Cotton's attempted suicide.

## I. BACKGROUND

On November 13, 2000, Cotton was arrested in Hutchinson, Minnesota on suspicion of assault, and he was booked into the McLeod County jail. Two days later, he was taken to the hospital after Koentopf, a correctional officer, noticed that Cotton had written "I love Adrian" on his cell and Jones, another correctional officer, talked to Cotton and learned that he had stabbed himself with a pencil and drank some cleaning solution. Jones documented Cotton's actions in a "Suicide Attempt Report." Later, Cotton was transferred to Willmar Regional Treatment Center for evaluation by Dr. Koss. Dr. Koss released Cotton on November 16, 2000, after he concluded that Cotton was not suicidal and was "psychiatrically stable for discharge to jail."

On December 3, 2000, Cotton again stabbed himself with a pencil and drank cleaning solution. He was taken to the Willmar Regional Treatment Center, and Dr. Koss examined him. Cotton was not placed on a suicide watch because he denied being suicidal. The next day after examining Cotton, Dr. Koss released him to the jail and recommended that Cotton be kept away from "cleaning solutions and sharps," and he prescribed an anti-anxiety medication[2] to be taken twice a day. Case, the County Jail Administrator, received a call in the evening of December 4, 2000, informing her that Cotton was being released. She was unable to speak with Dr. Koss, and she sent Lilienthal, a correctional officer, to pick up Cotton at the hospital. When she arrived at the hospital, Lilienthal learned that Cotton's prescription had not been filled. Because the nearest pharmacy was closed and because the road conditions were bad, Lilienthal decided not to get the prescription filled that night. The prescription was also not filled the next day.

While waiting for Cotton's return, Case decided that Cotton should be placed overnight in a "lockdown" cell that had bed sheets and that the jail officials would revisit his cell placement the next morning. Officers Kirchoff and Koentopf worked the night shift on December 4, 2000, and they performed 30–minute well-being checks on Cotton throughout the night. They did not notice anything unusual with him during that time. Officers Jones and Springman worked the morning shift on December 5, 2000. When Springman attempted to pass Cotton breakfast, Cotton spilled its contents on the floor. Later, Lilienthal informed Cotton that he would be "written up" for the breakfast incident; in response, Cotton yelled at her. The officers conducted well-being checks throughout the morning, although there is a dispute as to how often the checks were performed. Plaintiffs asset there was a 72–minute gap of time between Cotton's last check before his attempted suicide and when Cotton was found. The Individual Defendants and County maintain that there was a 30–minute interval between the last time Cotton was checked and when he was found.

On December 5, 2000 at approximately 10:00 a.m., Springman found Cotton hanging from a bed sheet attached to a vent in his cell. Although he was revived, Cotton now suffers from severe, permanent inju-

---

2. Dr. Koss specifically did not prescribe an anti-depressant to Cotton. *See* December 4, 2004 Discharge Form ("Over the course of hospitalization, patient did ask for anti-depressant. I related to patient adjustment disorder with mild, depressed mood that anti-depressant will not help him in regards to the situational depressed mood.") Instead, Dr. Koss prescribed Atarax, which Plaintiffs describe to be "a fast-acting, anti-anxiety medication that could have provided immediate relief to Mr. Cotton." *See* Supplemental Affidavit of Robert Sevenich, M.D. at ¶ 46.

ries, and he requires 24–hour care. On April 28, 2003, Plaintiffs commenced this action, alleging § 1983 and state-law negligence claims. The Individual Defendants and County filed a joint Answer, and Dr. Koss filed a separate Answer. In his Answer, Dr. Koss asserted a cross-claim for contribution and indemnity against the Individual Defendants and the County. Later, pursuant to a Stipulation of Dismissal With Prejudice and by Order dated January 31, 2003, the Court dismissed Plaintiffs' claims against Dr. Koss with prejudice.[3]

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Section 1983

 Plaintiffs' § 1983 claim alleges violations of the Eighth and Fourteenth Amendments and is based on the Individual Defendants and County's alleged failure to ascertain that Cotton posed a suicide risk and on their alleged failure to take reasonable and necessary measures to protect Cotton. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

The Eighth Amendment, applicable to the states under the Fourteenth Amendment, prohibits the cruel and unusual punishment of prisoners, thereby entitling them to medical attention for serious health needs.[4] *See* U.S. Const. amend. VII; *Es-*

---

3. Dr. Koss's dismissal, together with the granting of the Individual Defendant and County's Joint Motion for Summary Judgment and the corresponding dismissal of Plaintiffs' Complaint, appears to render Dr. Koss's cross-claim moot.

4. Cotton's status as a pre-trial detainee technically places him outside the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners. *Hott v. Hennepin*

*County,* 260 F.3d 901, 905 (8th Cir.2001). However, the Fourteenth Amendment guarantees pre-trial detainees at least as many protections as does the Eighth Amendment, and it extends pre-trial detainees protection from deprivations that are intended to punish. *Id.* Therefore, the governing standard for jail suicides involving detainees is the same regardless of whether it is analyzed under indirect application of the Eighth Amendment via the Fourteenth Amendment or under direct appli-

*telle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court will consider Plaintiffs' claims with respect to the Individual Defendants and the County separately.

### 1. Individual Defendants [5]

 With respect to the § 1983 claim against the Individual Defendants in their individual capacities, they assert the defense of qualified immunity. *See Johnson,* 172 F.3d at 535 (explaining that the defense of qualified immunity is only available to government employees sued in their individual capacity). Qualified immunity is a question of law to be decided by the district court. *Littrell v. Franklin,* 388 F.3d 578, 585 (8th Cir.2004). "In the prison-suicide setting, qualified immunity protects jailers acting in their official capacity from bearing the expenses of judgment and the burdens of trial where an inmate or his survivors has failed to show, or cannot show as a matter of law, that his jailers have acted in deliberate indifference to the risk of suicide." *Rellergert v. Cape Girardeau County, Mo.,* 924 F.2d 794, 796 (8th Cir.1991). When faced with an assertion of qualified immunity in a suit against an officer for an alleged violation of a constitutional right, a court must first consider whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a constitutional violation can be established, a court then considers whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

 In general, to establish a violation of the Eighth Amendment for a claim under § 1983, a plaintiff must demonstrate deliberate indifference on the part of municipal officials to the prisoner's serious illness or injury. *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. Section 1983 claims arising out of inmate suicide cases are "analyzed in terms of prison officials' failure to provide appropriate medical care, so deliberate indifference has become the barometer by which these claims are tested." *Olson v. Bloomberg,* 339 F.3d 730, 735 (8th Cir. 2003) (internal quotations omitted). The United States Supreme Court has likened deliberate indifference to a criminal recklessness standard, which traditionally has contained a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 837–840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish a constitutional violation in this instance, Plaintiffs must establish deliberate indifference by demonstrating that: (1) the Individual Defendants knew Cotton presented a substantial suicide risk and (2) the Individual Defendants failed to respond reasonably to that risk. *Olson,* 339 F.3d at 735.

Plaintiffs maintain that genuine issues of material fact exist as to whether the Individual Defendants were deliberately indif-

---

cation of the due process clause of the Fourteenth Amendment. *Bell v. Stigers,* 937 F.2d 1340, 1343 n. 4 (1991).

**5.** Plaintiffs sued the Individual Defendants in both their official and individual capacities to ensure that the Individual Defendants received notice of their potential personal liability. *See Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989). A § 1983 suit against an employee in his or her official capacity is deemed to be a suit against the employer only, which in this case is the County. *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir.1999). The Court will addresses the merits of the Plaintiffs' § 1983 claim against the County in section A(2).

ferent in failing to recognize and respond to the risk that Cotton was suicidal. They concede that "Defendants knew *only* what was contained in the Discharge Summaries of November 15 and December 4th, and those summaries warned defendants that Mr. Cotton remained at risk for harming himself and recommended that he be kept under close observation." *See* Plfs.' Mem. at 28–29 (emphasis added); *see also id.* at 8, 11. Further, they contend that Dr. Koss's discharge of Cotton on December 4, 2000, does not, by itself, mean that Cotton was not at substantial risk.

At this stage, the Court must view the evidence in the light most favorable to Plaintiffs and resolve any factual disputes in their favor. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the Court will assume that there was a 72–minute gap between the last time Cotton was checked and when he was found. The Court has reviewed Dr. Koss's discharge reports and concludes that the Defendants did not know that Cotton presented a substantial risk of suicide. The discharge reports describe Cotton's depression only as "mild" or "situational." Moreover, they note that Cotton consistently denied being suicidal and instead appeared to be manipulating the situation to get out of jail. Thus, this case is different than those relied on by Plaintiffs in that there is no report by the inmate or the inmate's relative that he or she was suicidal. *See e.g., Viero v. Bufano*, 925 F.Supp. 1374, 1377 (N.D.Ill.1996) (inmate's mother informed officials that her son was suicidal). With respect to the medication, while it is true that it was unavailable to Cotton during the relevant time frame, there is nothing in the discharge summaries to suggest that the anti-anxiety medication would have helped prevent Cotton's depression and attempted suicide. Indeed, Dr. Koss purposely did not prescribe anti-depressants. After reviewing the facts in the light most favor-

able to Plaintiffs, the Court finds, based on the information available to the Individual Defendants, that they were not deliberately indifferent to Cotton's needs because they did not act with "apathy or unconcern." *See Rellergert*, 924 F.2d at 797. Rather, with the information that they had, their actions demonstrate that they acted to protect Cotton by keeping sharps and cleaning solutions away from him and by performing well-being checks at frequent intervals.

Assuming that Cotton did present a substantial suicide risk, the Court further concludes that there is no genuine issue of material fact that the Individual Defendants responded reasonably to Cotton's suicidal tendencies. Plaintiffs rely heavily on the County's suicide prevention policy, which requires "well-being checks" every one-half hour for inmates in holding or segregation cells and every fifteen minutes for inmates "who are violent, suicidal, mentally disordered or who demonstrate unusual or bizarre behavior." Plaintiffs contend that the Individual Defendants did not act reasonably because there was a 76–minute gap between the last time Cotton was checked and when he was found hanging. The Court finds Plaintiffs' argument unpersuasive. The Eighth Circuit has concluded that failure to check an inmate's vital signs for over seven hours after instructions to do so every four-to-six hours did not constitute deliberate indifference. *Williams*, 201 F.3d at 1063. As discussed above, the Individual Defendants did not know Cotton was suicidal; therefore, they acted reasonably when they did not check Cotton every fifteen minutes.

Because Plaintiffs have failed to establish a constitutional violation because they cannot establish that the Individual Defendants acted with deliberate indifference, the Court does not reach the issue of whether the right was clearly established.

*See Saucier,* 533 U.S. at 200–01, 121 S.Ct. 2151. Accordingly, the Court grants the Individual Defendants' motion for summary judgment with respect to Plaintiffs' § 1983 claims.

### 2. The County

A § 1983 suit against a governmental entity employer is considered a *Monell* claim. In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that municipalities and other local governmental entities could be sued under § 1983 only for the entity's unconstitutional or illegal policies. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.*

In this case, Plaintiffs allege that the County "had a policy and custom of overcrowding and understaffing its jail," which "played a direct and substantial role in Mr. Cotton's hanging." They point out that the Department of Corrections advised the County that it should operate at 70% capacity, meaning that only 25 out of the 35 beds should be in use at one time to ensure that there were enough officers to tend to the inmates' needs and to ensure that there were unoccupied beds available for inmates with special needs. However, in 1999, Plaintiffs note that the County operated its jail at 77% capacity, and in the first six months of 2000, the County operated its jail at 85 % capacity. Moreover, on the night before Cotton attempted to commit suicide, 32 of the beds were in use when he arrived from the hospital. Also at that time, Plaintiffs explain that the County had only two sets of "suicide prevention clothing," and those sets were in use when Cotton arrived. Consequently, Cotton was placed in lockdown status in a minimum-security jail cell without the suicide prevention clothing. In response, the County asserts that there is no evidence of a policy or custom that actually caused any of the claims made by Plaintiffs.

The Eighth Circuit does not use the terms "policy" and "custom" interchangeably when conducting a *Monell* analysis. *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999). Rather, a policy is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* Although Plaintiffs use the term "policy" in their opposition memorandum and there is reference made to the County's suicide prevention policy, there is nothing in the record to support a finding that the County had any official policy that arguably played a role in Cotton's attempted suicide. Accordingly, Plaintiffs' argument with respect to this issue is without merit.

To establish a custom, Plaintiffs must establish three factors: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the County's employees; (2) deliberate indifference to or tacit authorization of such conduct by the County's policymaking officials after notice to the officials of that misconduct; and (3) Cotton's injury was caused by acts pursuant to the County's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation. *Id.* Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have failed to create a genuine issue of material fact regarding the existence of a municipal custom. Without more, they have failed to establish how the County's failure to operate at times at 70% capacity equates to widespread, persistent, unconstitutional misconduct. Moreover, they have failed to create a genuine factual issue with respect to whether the County's

operational capacity was the moving force behind Cotton's suicide. Accordingly, the Court grants the County's summary judgment motion with respect to the § 1983 claims.

## B. State–Law Negligence Claims

In addition to the § 1983 claims, Plaintiffs also assert claims of negligence under Minnesota state law based on the Individual Defendants and County's alleged failure to prevent Cotton's attempted suicide.[6] The basis for the Court's jurisdiction over these claims is 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. In general, to establish a negligence claim under Minnesota law, a party must prove (1) duty; (2) breach; (3) causation; and (4) damages. *Woehrle v. City of Mankato*, 647 N.W.2d 549, 551 (Minn.App.2002). In Minnesota, a jailer has a duty to prevent inmate suicide. *Sandborg*, 615 N.W.2d at 64.

The Individual Defendants assert that they are entitled to official immunity under Minnesota law with respect to the negligence claims. Whether official immunity applies is a question of law. *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn.1998). Official immunity

protects public officials from the fear of personal liability that might deter independent action. *Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn.1996) (quotation omitted). Official immunity applies when the official's conduct involves the exercise of judgment or discretion, but it does not protect ministerial acts or malicious conduct. *Kari*, 582 N.W.2d at 923. Therefore, "[w]hether official immunity is available depends on whether the alleged acts were (1) discretionary or ministerial, and (2) malicious or willful." *Fedke v. City of Chaska*, 685 N.W.2d 725, 729 (Minn. App.2004).

A discretionary act requires the exercise of individual judgment in carrying out the official's duties. *Id.* More specifically, "a discretionary act involves individual professional judgment, reflecting the professional goal and factors of a situation." *Huttner v. State*, 637 N.W.2d 278, 284 (Minn.App.2001). An official's duty has been described as ministerial when it is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Johnson v. State*, 553 N.W.2d 40, 46 (Minn.1996).

In this case, the Individual Defendants assert that they are entitled to official immunity because their decisions regard-

---

**6.** Specifically, Plaintiffs allege that Defendants failed to (1) maintain proper staffing levels at the jail; (2) properly train and supervise correctional officers; (3) prevent overcrowded situations at the jail by accepting inmates in excess of recommended capacity; (4) failure to properly classify, treat, and supervise Cotton as an inmate at risk for suicide and/or self-injurious behavior; (5) remove sheet and other items that Cotton could use to harm himself; (6) place Cotton in a cell that did not have any protrusions or anchoring devices; (7) place a suicide gown on Cotton; (8) follow Dr. Koss' recommendation that

Cotton be monitored closely; (9) fill Cotton's prescription for anti-anxiety medication. As an initial matter, the Court notes that Minnesota does not recognize a cause of action for negligent training. *McKenzie v. Lunds, Inc.*, 63 F.Supp.2d 986, 1007 (D.Minn.1999). However, the essence of Plaintiffs' claims are that the Individual Defendants and the County failed to take appropriate steps to prevent Cotton from attempting suicide. As such, these types of claims are recognized under Minnesota law. *Sandborg v. Blue Earth County*, 615 N.W.2d 61, 64 (Minn.2000).

ing when to fill Cotton's prescription, whether to issue bed sheets to him, and where to place him when he returned from the hospital were discretionary decisions. In response, Plaintiffs contend that the Individual Defendants are "frivolous" for attempting to invoke the defense of official immunity. Because the Individual Defendants admitted that they were required to follow mandatory jail policies in dealing with suicidal inmates, Plaintiffs maintain that the Individual Defendants' actions were ministerial because it is established County policy not to issue bed sheets to suicidal inmates and to check such inmates every fifteen to thirty minutes.

The Court disagrees with Plaintiffs. Plaintiffs' argument assumes Cotton's attempted suicide is conclusive proof that the Individual Defendants should have performed the ministerial act of following the jail's suicide prevention policy because Cotton was indeed suicidal. Such an assumption cannot be made in these circumstances; instead, the circumstances surrounding Cotton's release from the hospital need to be considered in order to determine if the alleged acts were discretionary. *Cf. Papenhausen v. Schoen*, 268 N.W.2d 565, 572 (Minn.1978) (discussing how facts surrounding a parole board's decision to release an inmate shows that such a decision is discretionary).

Here, viewing the evidence in the light most favorable to Plaintiffs, the evidence reveals that the Individual Defendants' alleged acts were discretionary. When Cotton was released, the Individual Defendants received the discharge form, which stated that Cotton denied any suicidal intent and that he could be attempting to manipulate "the system in order to get out of jail in the future." To ensure Cotton's safety, the discharge form recommended "close monitoring" and "no sharps to patient in jail and to make cleaning solutions

unavailable to incarcerated individual." Dr. Koss also prescribed an anti-anxiety medication to be administered twice a day. After receiving these instructions, the Individual Defendants exercised their judgment and discretion in determining how to best care for Cotton in accordance with Dr. Koss's orders and with his conclusion that Cotton could be manipulating the system. For instance, Lilienthal used her judgment in determining that she could wait to fill Cotton's prescription, Springman used his judgment in deciding Cotton's punishment for spilling his breakfast tray, and Case used her judgment in determining to place Cotton in lockdown, away from sharps and cleaning solution. Thus, the Individual Defendants acted with discretion with respect to their placement and treatment of Cotton.

▪ The question of malice is an "objective inquiry into the legal reasonableness of an official's actions." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994). In determining whether an official has committed a malicious wrong, a court must consider whether the official has intentionally committed an act that he or she had reason to believe is prohibited. *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991).

The Individual Defendants assert that there is nothing in the record to suggest that they acted maliciously. Viewing the evidence in the light most favorable to Plaintiffs, the record does not support a conclusion that the Individual Defendants acted with any malice intent; instead, they promptly took Cotton to the hospital each time they discovered he had harmed himself, they promptly found emergency help after Cotton was found on December 5, 2000, they attempted to comply with Dr. Koss's orders by placing him in a cell without sharps and cleaning solution, and they checked on him frequently. Given

this and because the Individual Defendants' alleged acts were discretionary, the Court finds that the Individual Defendants are entitled to official immunity. *See Fedke*, 685 N.W.2d at 729.

■ When employees are entitled to official immunity, "vicarious official immunity protects the government entity from suit based on the official immunity of its employees." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn.1998). Therefore, because the Individual Defendants are entitled to official immunity, the County is entitled to vicarious official immunity. Because the Court determines that the Individual Defendants and the County are entitled to official immunity, it does not reach their remaining arguments. Accordingly, the Court grants the Individual Defendants and the County's joint motion for summary judgment with respect to Plaintiffs' negligence claims.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' claims against Dennis Johnson are DISMISSED WITH PREJUDICE.
2. The Individual Defendants and County's Joint Motion for Summary Judgment [Docket No. 27] is GRANTED.
3. Plaintiffs' Complaint [Docket No. 1] is hereby DISMISSED WITH PREJUDICE.
4. The parties shall forward a copy of this Order to Dr. Koss and his counsel, and together they shall contact the Court in writing within ten (10) days from the date of this Order to inform it as to the status of Dr. Koss's cross-claim. Assuming Dr. Koss's cross-claim is moot, after re-

ceiving the parties' written submission, the Court will dismiss with prejudice Dr. Koss's Cross–Claim [Docket No. 7] and direct the Clerk of Court to enter judgment in this matter.